Good morning. If it may please the Court, my name is Philip Pillsbury. I'm Pillsbury & Levenson in San Francisco, and I represent Crowley Maritime Corporation. I'd like to reserve five minutes, if that's possible, for rebuttal and take my initial ten now. Okay. And Mr. Goodwin is listed here, but he's not arguing. He will not. You may pass me a note from time to time. All right. The issue today is whether or when a policyholder who enters into a proposed settlement that it can walk away from and tells its insurance companies, while it can still walk away, about the proposed settlement, and the insurance companies stay silent for more than five weeks, allowing the settlement to become binding, whether the insurers thereafter can rely on the consent clause to work a forfeiture of the coverage. That's the question before us. Well, I guess that depends on your ability to walk away, doesn't it? I mean, the facts seem to be that on March 19, you entered into this settlement agreement that required your cooperation of both parties to get the courts to approve it and all the rest of it. You tell the insurance company about it three days later on March 22. Like you said, as long as we had the right to walk away, we could have just left it at any time we wanted to. You said it's not done. It's totally illusory. Is that your point? No. My point is that we did enter into a stipulation of settlement in which a proposed settlement was made. The terms and conditions of the stipulation show important considerations, important conditions. There is a material adverse change clause or a MAC clause. There was a clause permitting the board to maintain control of the settlement until the 11th hour and to refuse to proceed. But the court didn't approve the settlement. No. The court didn't approve the settlement until April 27th. This settlement was not approved. This was a stipulation. I'm sorry. I meant the board. The board had permitted the stipulation to go forward. That is to say the board permitted the tender offer to be launched, and it was launched. But it always maintained the board. It had outside counsel and all to advise them on this, too, didn't it, the board? Well, it had a special committee. It had transactional counsel. It had defense counsel in Delaware. Yes, it had those lawyers. And the transactional counsel believed that under the SEC regulations it was not at liberty to notify the insurance companies of this proposed settlement. And the reason for that is clear. It was a tender offer, and very, very few people had any knowledge. Regulation F.D. of the Securities and Exchange Act prohibits selective disclosure. And the transactional counsel believed that this kind of disclosure to insurers, even under a confidentiality agreement, might be construed to violate F.D. And we as coverage counsel don't second-guess what transactional counsels say, but we knew that the agreement was proposed. And, in fact, when it went to the insurance company, they recognized it as proposed. They called it proposed. There were proposed language both in the tender offer and in the stipulation of settlement itself. Well, let me go back to the securities issue. I mean, obviously, there's always a concern in these cases of partial disclosure, which can tip the market or actually violate the securities laws. But it just seems odd for the company to make a unilateral decision on that point, and then to come back and say, so we didn't have to give you notice. I mean, because then your contract says what it says. Yes, it does. So that's where I'm having some trouble as to what to do with this unilateral decision. That, under the same theory, although maybe with different public policy considerations, you could probably think of ten other things that the company could do unilaterally that would justify not giving notice. And so I'm having trouble why that basically slices through the contract. Sure. Two responses to that. First, the way this tender offer was set up was in accordance with Delaware law. Delaware law says you can rely on an 11th-hour condition. The board has control to the end. Under Gilbert v. El Paso, the board controls the offer. It's called a master of the offer, and it can put whatever conditions it wants in the offer. And that's exactly what happened in the Gilbert case, as the Court will recall, where Burlington Northern had a tender offer for El Paso and, in the last month, pulled the tender offer because it felt that the market conditions had changed, and it issued a new one. And the El Paso shareholders howled. And the court in Delaware said it's perfectly legal to do this. In Delaware, the offeror is master of the offer, so that this conditional settlement under Delaware law was conditional. It could not have been enforced. If on March 22nd someone had said, let's enforce this settlement, after all there's a best efforts clause or there's a specific performance clause, that would have been overridden under Delaware law as a matter of law, under the Gilbert case and under the Wolfson case. So we know that as a matter of law, this was a proposed settlement. More importantly, when we look at clauses like this, and I've been practicing insurance coverage law for almost 35 years, we see consent clauses all the time. There are three ways that you look at them analytically. One, what's the category? Two, who did what to whom? And three, what's the remedy? Category one is, does the insurance company control the defense or not? If it controls the defense, then you cannot go around the insurance company's back to settle without their knowledge. That's the low case. If it's not controlling the defense, that is to say it has no obligation to defend, it is not defending, it is not participating in the defense, it has fully reserved its rights, then it's in a different category. And that comes into the Fuller-Austin case. So how is that insurer hurt? There is no fait accompli that can be handed. You're not going around the back of that insurer. Why not? Because it reserves its right at trial to say there is no – it was not a reasonable settlement. There are exclusions that apply. There is collusion or there's fraud. And that's why Fuller-Austin – The Fuller-Austin case, though, didn't that have to do with excess insurance and they didn't have a duty to defend? It was really kind of a different setup than here. These insurers had no duty to defend either. And that was clear in the Fuller-Austin case. And they don't say that they do have a duty to defend. They say we had no duty and we are not defending. And so in that analysis that I've given you, the way that we look at these clauses, we look at Fuller-Austin. And Fuller-Austin says this at page 985 of that site. Appellants, because appellants were neither acknowledging coverage, which is the case here, nor providing a defense, the case here, and therefore were in no way exercising control over the asbestos claims brought against Fuller-Austin. We find it difficult to permit appellants to rely, without qualification, on a consent provision that is designed to protect defending insurers. And the Court goes on. Indeed, appellants have not directed us to a case holding that a non-breaching excess insurer with knowledge of an impending settlement may decline to participate in settlement negotiations, yet then rely on the policy's consent provision to avoid responsibility under the settlement. And so the question there really is the relationship, it seems to me, between the excess carrier and the primary carrier. And they basically are saying if your primary carrier is going ahead to settle, you know, the excess carrier can't hold them hostage, basically. But do you have a case that says that same thing, where there's not an excess carrier, but just a primary carrier? The Fuller-Austin case applies when there is a carrier, Federal as a primary carrier, without a duty to defend. It's one that fully resolves. That doesn't really quite answer my question. Okay. I know that's your argument, but my question is, is there a case we should look to where you don't have this excess primary or underlying carrier relationship, but just a single carrier and the notice and duty to defend issues are addressed? Diamond Heights applies to that situation. That's cited in Fuller-Austin. And what the courts are looking at in every instance is, does the insurance company control the defense or not? Because once you get through that category, in every case that's cited here falls into one bucket or another. It's either controlling the defense or it isn't. These carriers were not controlling the defense, and they don't contend otherwise. Because then the next question is, who did who to what? What was the obligation? And our obligation was to advise the carriers that we were initiating settlement discussions. That's what paragraph 16b of the policy says. It says we can't do that. It's without notifying them. It says that we can't incur any expense without notifying. We have various provisions in policy section 16b that we are required to comply with. And so the defendants in this case say, gee, it says you can't settle. You settle. That's the end of the case. Well, not under the analysis of every court that's looked at, what is the obligation you have to a nondefending insurer? And the answer is, both sides have an obligation. We have an obligation to give them notice of certain events. They have an obligation to respond to us when we ask for a response. They criticize us for not telling them about the initiation of negotiations or entering into a stipulation for settlement. We criticize them because when we notified them five days later, actually they received notice on March 22nd, and Mr. Shively's letter went on March 28th, and it said, we ask for your consent to this proposed settlement. They came back, Federal did, a week later orally and said, we have no problem with settlement, but we need to get additional documents. We want to have the stipulation for settlement, which they already had. We sent them another copy. We understand there's going to be a hearing before the Chancery Court. We want to see the briefs. Those briefs weren't available yet. Additional letters went out when the briefs were available, encouraging the insurers to become involved. Under the law in California, under the Code of Regulations, the insurance companies are required to respond with every knowledge, every bit of knowledge that they have. This they failed to do. Had they done that, it's very simple. They could have come forward and said and should have said, look, we haven't investigated this case at all. We'd like to know what the premium is that you're paying. What are the attorney's fees that are going to be assessed as damages? We think there's a problem with the settlement. We don't think we were given adequate notice of the settlement. We have some pretty good ideas about this settlement. We have declarations that are uncontroverted from Mr. Abramczyk, from Mr. Smith, from Mr. Ficon, that they were never contacted by the insurance companies. And moreover, Mr. Crowley and Mr. Smith both say, if we were contacted by the insurance companies and they said, we're not going to pay you $25 million to settle this case, because that's the coverage that was at stake, Mr. Crowley and Mr. Smith would have contacted the plaintiff's lawyers and said, look, we need to reopen negotiations. We're not going to be able to complete this settlement as it stands. We need to have the carriers participate in the room and tell us their ideas. I beg your pardon, Your Honor. You just got done telling me that the company counsel said you couldn't tell them. No. Once we went public, we were free to tell them. We went public on March 19th. That's when the tender offer went out and that's when the stipulation for settlement was made public. Once that happened, we went forward and said, come to us. The settlement is not final. If you have ideas, tell us what they are. And if they had said, you didn't get our consent in time, we'd say, we're not going to argue about that. We'll just call the plaintiff, have the plaintiff arrange another settlement conference, and you can participate in any way you want to tell us what additional information you have that would change our minds about this settlement. And if you're not going to pay $25 million because there's a condition that you think we've reached, we would want to know that. They were required to tell us that, and they didn't do it.  Thank you, Your Honor. Thank you, Your Honor. May it please the Court, my name is Christopher Hanman. I represent Federal Insurance Company. I'll be dividing my time with Mr. Perlis, who represents Twin City. California has a consistent history of enforcing consent to settle clauses as written, and there are only two discrete exceptions. One, where the insurance company has already breached, a point that Crowley has never contended here. And two, where there are exceptional circumstances that give rise to exigent circumstances where consent could not be practicable. To deal with that issue first, there's never been an argument that the confidentiality has independently been an excuse. That's been an atmospheric point that's been in Crowley's brief. But it's the reason you don't see it as an independent argument is because they've already conceded. If you look at page 469 and 470 of the Twin City ER, you will see their interrogatory responses where they concede that even with Regulation FD, they could have simply obtained a confidentiality agreement and executed that with the insurers. That's the way you deal with that situation. In Judge McKeown, you're exactly right. The upshot of Crowley's suggestion would be an exception that swallows the rule, because in practically any settlement involving high-profile Fortune 500 companies or public companies, there will always be concerns about potential stock manipulation and arbitraging. That's not an excuse to ignore the plain language of the contractual provision, and certainly no court in California has ever suggested that. That then leads to the bright-line rule that the district court below applied and that courts in California have consistently hewed to, which is that where an insurer executes a settlement agreement, even one couched in conditions, it violates the consent to settle clause if it fails to procure the insurer's advanced written consent. And it's not just consent in the abstract. It's advanced consent. It's that temporal limitation that is the key bargain that the insurer insists on in these sorts of provisions. It's the difference between a binary yes or no, take it or leave it, after rights have already come into existence, and the opportunity to influence that settlement and make sure that you are not participating or being — you're going to be obligated to pay something that you've had no role in potentially negotiating. That is the key point that California courts have hewed to. Crowley's rule, by contrast, is an unworkable rule that invites confusion and uncertainty in an area that demands the predictability. And that's why they're unable to cite a single case from California that has ever endorsed the peculiar rule that they have adopted. Their rule, as I understand it at least, has several contingencies. There can be no breach unless the insurer is actively defending the lawsuit. There can be no breach also if the insurer has reserved its rights. And there can be no breach if the settlement agreement, even though designated as final, has some conditions subsequent. But California courts have rejected each of those propositions. The Lowe case, for example, there was a reservation of rights by the insurer, but the court of appeal recognized that there was a breach of that agreement. In the Jamestown Builders case, the same thing. Judge McEwen, you asked the question about is there a case involving simply a primary insurer where there isn't any duty to defend issue. And the case is American International Specialty Lines. That was a case in which Continental, the insurance company, was a primary insurer.  It had no duty to defend. And yet the court of appeal in that decision recognized that the insured's failure to procure the advanced consent of that non-duty-to-defend insurer violated the consent to settle clause. And it's important to recognize why this distinction that Crowley tries to draw makes no sense. Many policies, most D&O policies, in fact, contain no duty to defend. Under Crowley's rule, it would essentially read out of the policy the consent to settle provision. It would essentially say any time an insurer stands on its rights not to defend, it necessarily abdicates its ability to enforce as written the consent to settle clause. That's a rule that makes no sense. It can't be harmonized with the plain language of the policy, and it's certainly not a rule that California courts have endorsed. It's also important to recognize that even their principal authority, Fuller-Austin, recognized exactly these points. At page 984 of the Fuller-Austin decision, the Court expressly went out of its way to say that an insurer that reserves its rights violates no duty to the insured under the policy. At page 984 of the opinion, it also recognizes that an insured who has no duty to defend does not violate or breach the contract if it simply refuses not to defend. That's the way the parties have written the agreement. And no court is free to overwrite that decision. Ultimately, what Fuller-Austin turns on is a very peculiar situation where the insured has invited the insurer to participate in the negotiations and the insurer has refused to do so. That quite clearly is not the situation you have here. The record is undisputed that up until the March 19th announcement of the settlement, which incidentally Crowley called a settlement on the time it was issued, Federal was never informed, none of the insurers were ever informed of any settlement, let alone sought their consent for that approval. What about so they basically they have their tender offer on March 19th, is it? The tender offer goes out March 19th. So now it's public. And then they have some discussions with the insurance company after that, correct? They're saying, well, we had this opportunity came up and so we went ahead and did this. Sure. But then I thought at some point the SEC said that some of the conditions they had basically would render it illusory so they have to, in effect, remove these conditions, this sort of walk away provision, right? It had to modify one of the provisions that purported to give Mr. Crowley essentially a unilateral ability to walk away. So the question then is, is there a settlement on March 19th? Yes. If, in fact, later the SEC invalidates part of that settlement, which included the walk away provision, is the settlement sort of put over then to the later date in April? No. And I think there are two reasons why. First, the SEC didn't weigh in on the settlement agreement itself. It weighed in on the tender offer. So the SEC's decision has nothing to do with the actual four corners of the settlement agreement itself. But if the SEC's decision has nothing to do with the actual four corners of the settlement agreement itself. But that wasn't the condition in the – that wasn't one of the conditions in the settlement. No. It was the – really it was the final court approval was the primary condition in the settlement? The settlement agreement has two principal conditions, the final court approval and the tender offer actually going through. But the SEC's opinions only weighed in on the actual nature of the tender offer itself. But it's important to recognize that whether those conditions exist or don't, under California law, that doesn't make the settlement agreement anything other than a settlement agreement. You see that in the Brown and Bryant case, for example, where the court recognized that, as it said, quote, the salient factor is not what did or did not occur, end quote. And even in Lowe, you had the court recognize there a violation of a consent-to-settle clause, even though the court recognized that the agreement there was, quote, made condition on – made condition – condition on conditions precedent. That is the situation that you have here. You have a series of conditions subsequent. And under California law, conditions subsequent do not render an otherwise enforceable agreement, a binding agreement, which they concede is a binding agreement, anything other than that. I want to make sure that Mr. Perlis has enough time to respond, so if there are no further questions, Your Honor. Thank you. Thank you. First, Your Honor, I wanted to address the question you asked about the SEC. Crowley takes the position that Mr. Crowley, in his sole discretion, had the opportunity to walk away from the settlement at any time, and therefore that rendered the settlement conditional. The problem with the argument is that the 14D9 schedule made clear that the settlement would be continued until April 20th. Therefore, the argument that Mr. Crowley could have abandoned that settlement on March 23rd, 24th, 25th is contrary to the express language of the 14D9 tender offer material. The SEC came forward in a letter on April 6th contending that the provision of the settlement agreement that gave or purported to give Mr. Crowley absolute discretion was, in essence, a fraudulent tender offer, would make it a fraudulent tender offer, and Crowley withdrew it. So that the concept that Mr. Crowley was free to abandon it at any time is inconsistent with the timing of the representations made in the Section 14D and the SEC letter and their ultimate determination to abandon the condition. The board representation issue is similarly a red herring. When the company announced the settlement on April 19th, and my client, Twin City, did not receive notice of the settlement until March 28th, not March 22nd. Only Federal received it on March 22nd, and I wholly adopt the arguments made by Federal as the primary carrier. Crowley said, and I quote from the press release, based upon a recommendation of a special committee of independent directors of the Crowley Board of Directors, a majority of the Board of Directors has, one, determined that the tender offer is fair to and in the best interest of the unaffiliated stockholders, and, two, recommend that the unaffiliated stockholders accept the tender offer and tender their shares of common stock. Therefore, that condition had already been satisfied. What Crowley attempts to do now is to say, well, even though they had already recommended this to the shareholders and told them to go ahead and tender their shares, we could have changed our mind if the carriers had said something subsequent to the tender. The problem is there's nothing in the record to say that. Counsel said Mr. Crowley would have called the plaintiffs and said we've got to start from scratch if the carriers objected. There's nothing in the record to support that. The only evidence is Mr. Crowley's statement that says something to the effect of, if the carriers had given me good reason why I shouldn't go forward with the deal, I would have considered it. And I think that's what Judge Ilston found in her opinion, and the statement that was made here as to what Mr. Crowley would have done is simply made up outside the record. The issue of confidentiality also is a red herring. FD does not apply to carriers by its express terms, and a confidentiality agreement as of the kind in Fuller-Austin could have been entered into that would have allowed the carriers to receive the information and have digested it. The problem with this particular case is normally when a carrier is presented with a settlement, it is the settlement of the claim that's at issue in the underlying litigation. This settlement had nothing to do with the claim in the underlying litigation, which was whether or not there was a breach of fiduciary duty in the payment of life insurance premiums for Mr. Crowley's benefit. This was a full-blown tender offer, a going private transaction for the minority shareholders. Counsel said, well, when there was a consent to settlement request on March 28th, we should have called up and said, what are we consenting to? The fact is Mr. Abramchik, who is the counsel in Delaware for Crowley, repeatedly told the Vice Chancellor, we don't know and we can't determine what the value of the settlement of the underlying litigation is compared to the overall tender offer for which the carriers are not obligated. And in fact, the Vice Chancellor in his opinion makes that clear, that Abramchik represented, they had no clue what it was. So had we made the phone call that counsel suggested, I presume that we would have been told the same thing the Vice Chancellor was. We have no clue what the value of that settlement is. Excess carriers. There is a case squarely on point, and it's post-dating Fuller. Fuller didn't deal with an excess carrier in a vacuum. It dealt with an excess carrier where it appeared the primary carriers had already tendered. In this case, if the Court will recall, the original complaint filed by Crowley alleged that each of the carriers, the primary and the two levels of excess, had breached contract and breached the covenant of good faith and fair dealing. There was a motion to dismiss filed, which was granted. And the motion to dismiss was predicated on the simple premise that California law routinely holds, and this Court did in IOLAB, that until the primary policy is exhausted through payment, the excess carrier has no duty. And that's exactly what the Court of Appeal in Aerojet held in 2007, I believe, Your Honor. Third District Court of Appeal said where the excess carrier was aware of settlement negotiations over a period of months and did absolutely nothing, the California Court of Appeal expressly held that unless and until the primary carrier admits liability or there's a judgment against the insured, the excess carrier has no obligation to investigate or do anything else, and it was not stopped from asserting the consent clause in rejecting the settlement. The case that Crowley cites and the authority Crowley cites deals with circumstances and Fuller-Austin is a reportedly seminal case where the excess carriers have lain in the reeds or hidden in the woods or whatever you want to call it for months, aware of settlement negotiations, closing their eyes, shutting their ears, declining to participate, and then at the 11th hour run in and say no. This case is precisely the reverse. Here it was that Crowley kept the negotiations secret for three months, retained experts, got expert counsel, prepared a tender offer, made a tender offer, issued a press release, and then finally several days later thought it might be appropriate to tell the carriers we've done it. But they conflate concepts. Settlement doesn't mean, as they suggest in their brief, a final commitment to pay. It simply means make a settlement. Commit contractually to do something. They've admitted that they've done that. And according to unbroken chain of California law, having breached the consent clause, they forfeit any right to coverage under the policy. Thank you, Your Honor. Unless you have any questions, my time is up. Thank you. Well, I thought I had about five. I didn't reserve that much. Well, wait. That's what I was trying to do. Wait just a minute, though. Pardon? Do you think I have one minute? Yeah, that's what you had. You had sort of talked up your time. I'm so sorry. I should have been keeping closer to time than that. I'll give you two minutes. Thank you so much, Your Honor. Restore your time. Thank you. Thank you so much. Counsel confuses one thing that's really important. One, that if you have a settlement, they say that's it, your coverage is forfeited. We know that that's not true. All of the cases say that's not true. It depends upon what you agreed to do. If you agreed to hire an expert for $20,000 and you were required to tell the insurance company about it, that doesn't forfeit your coverage, although it may forfeit $20,000. If you're late in tendering a defense, in the Jamestown case, that may mean you have to pay for the lawyers that you the expense you incurred before you went in. There's a remedies clause. The policy says you're only liable for the loss that you actually incurred. So if we have an agreement, a stipulation for settlement, what does that mean? What should the remedy be for that? What could happen on March 19th? We know one thing's very clear. If the plaintiffs had brought a motion to compel settlement on March 19th in Delaware, it would not have been granted. We know that because that's what the Gilbert case says. We know that because the Crowley board had the right to oppose this merger and offer all the way up until the 11th hour. So it could not have been compelled. You would not have known whether the material adverse change clause had been violated. All of that was open to discussion. And so, Your Honor, you make exactly the right point. When the SEC reviews the tender offer and says the condition about Mr. Crowley is out, but the other conditions are still good, and continues the discussion on settlement until April, where was the insurance company at that point? Why on March 28th didn't they respond? They are required under the law, upon receiving any communication from a claimant regarding a claim that reasonably suggests that a response is expected, every licensee must immediately, but in no event more than 15 calendar days after receiving that communication, furnish the claimant with a complete response based on the facts then known to the claimant. Why not come to us and say we have a problem with the settlement? Instead, they treated it, as they said, as a gift horse. They kept silent. They did not want Crowley to understand that that's the position that they would take. And they did not change that position until June 7th, almost two months later, after the district, after the court of chancery had approved the settlement, the tender offer was complete, and it became binding. Their obligation, and California law says an estoppel arises when they refuse to meet their obligation, their obligation is to say to the insured, we have a problem with the way this settlement is going down. We have some things we want to say. What they cannot do is to wait, is to hover, as the Fuller-Austin case says. They cannot hover at the end. Remedies. One more.  I think we have your ---- Kagan. You have now taken three and a half minutes. So. Carvin. Thank you, Your Honor. Ginsburg. I think it's time to conclude. We do have your argument in mind. Of course, we have the briefs as well. So I want to thank all counsel for the argument. This morning, Crowley v. Federal Insurance is submitted, and we're adjourned for the morning. Thank you.
judges: Hall, Thompson, McKeown